IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**BONNIE AMBROSE, TIFFANY SELLECK,**
**and JOANN PORTILLO-GARCIA,**

    Plaintiffs,

v.                                                              No. 17-cv-0681 MV/SMV

**GRINDELL & ROMERO INSURANCE,**
**INC., and ROBERT ABERCROMBIE,**

    Defendants.

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on Plaintiffs' Motion to Remand, filed on July 3, 2017. [Doc. 8]. Defendants responded on July 17, 2017. [Doc. 11]. Plaintiffs replied on July 26, 2017. [Doc. 12]. The Honorable Martha Vázquez, United States District Judge, referred this matter to me for analysis and a recommended disposition. [Doc. 14]. Having considered the briefing, relevant portions of the record, and relevant authorities, and being otherwise fully advised in the premises, I recommend that Plaintiff's Motion to Remand be granted and that the case be remanded to the Third Judicial District Court, Doña Ana County. I further recommend that Plaintiffs be awarded reasonable expenses in connection with their motion.

### Background

Plaintiffs are former employees of Defendant Grindell & Romero Insurance, Inc. ("GRI"), of which Defendant Abercrombie is the CEO. Plaintiff Ambrose filed the instant action in state court in the Third Judicial District, Doña Ana County, on May 22, 2017. [Doc. 1-3] at 1.

The Complaint alleged that Defendants engaged in pervasive sexual harassment and discrimination against "several" of their female employees, including Plaintiff Bonnie Ambrose and Tiffany Selleck. *Id.* The Complaint set forth two counts of gender discrimination and retaliation in violation of the New Mexico Human Rights Act ("NMHRA"), NMSA 1978, § 28-1-7(A). *Id.* at 16–19. Plaintiffs filed their First Amended Complaint on June 2, 2017. [Doc. 1-2]. The First Amended Complaint adds as parties Plaintiffs Selleck and Portillo-Garcia and adds four additional counts. As to Plaintiff Portillo-Garcia, it alleges NMHRA claims based on age discrimination, race/national origin discrimination, and wrongful termination. [Doc. 1-2] at 29–33. And as to Plaintiff Selleck, it alleges failure to pay due wages pursuant to NMSA 1978, § 50-4-4. In total, the First Amended Complaint alleges six counts under the NMHRA and § 50-4-4.

Defendants removed the case to this Court on June 28, 2017, citing the existence of federal-question jurisdiction under 28 U.S.C. § 1331. [Doc. 1]. Though Plaintiffs allege violations of state law only, Defendants argued their claims "raise issues that are necessarily ones of federal law," namely Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621. *Id.* at 3.

Plaintiffs filed the instant motion to remand on July 3, 2017. [Doc. 8]. Plaintiffs contend that the case was wrongfully removed because it involves no federal claims. As an initial matter, Plaintiffs argue that Defendants are not subject to Title VII or the ADEA because they do not employ at least fifteen people. Therefore, Plaintiffs suggest, they could not have asserted those federal claims in the first instance. *Id.* at 1, 5. Moreover, the plaintiff is "master of his or her complaint" and may avoid federal jurisdiction by relying exclusively on state law. *Id.* at 7

2

(internal quotations omitted). Plaintiffs argue they have done just that—they have asserted only state-law claims and expressly disavowed any federal claims. They argue that merely citing to federal case law in a pleading, as they have done, does not confer federal jurisdiction. *Id.* at 5–7. At bottom, they have stated claims under state law alone, and their right to relief does not "necessarily depend[] on resolution of a substantial question of federal law." *Id.* at 3 (internal quotations omitted). Plaintiffs further request attorney's fees in connection with their motion. *Id.* at 8–9.

In response, Defendants maintain that recent Supreme Court case law makes clear that having fewer that fifteen employees does not create a bar to federal jurisdiction. [Doc. 11] at 1–3 (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006)). The thrust of their argument, though, is that Plaintiffs' numerous references to federal case law interpreting Title VII and the ADEA confer federal jurisdiction. *See id.* at 4–10. They argue that Plaintiffs should not be permitted to seek "all of the presumptions and potential benefits that could only be conferred upon them by federal law," on the one hand, while still avoiding federal jurisdiction on the other. *Id.* at 9. Defendants rely on the so-called "artful pleading" doctrine, which provides that a party cannot defeat federal question jurisdiction by couching his or her complaint in terms of state law, where the claims are actually federal in nature or necessarily depend on federal law for their resolution.

## **Legal Standards**

Pursuant to 28 U.S.C. § 1441, an action may be removed from state to federal court when the federal court has "original jurisdiction" over the action because it is founded on a claim or right "arising under" federal law. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of

citizenship, federal-question jurisdiction is required." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

To determine whether an action "arises under" federal law—i.e., whether federal-question jurisdiction exists—courts follow the "well-pleaded complaint" rule. *Id.*; *Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012). That is, courts determine whether a federal question is presented "on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392. "A case 'arises under' federal law under two circumstances: 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Gilmore v. Weatherford*, 694 F.3d 1160, 1170 (10th Cir. 2012) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006)). "Th[is] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392. "[T]he plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Id.* at 400.

The well-pleaded complaint rule is not absolute. Under the so-called "artful pleading" doctrine, "a plaintiff may not defeat removal by failing to plead federal questions that are essential elements of the plaintiff's claim." *Turgeau v. Admin. Review Bd.*, 446 F.3d 1052, 1060–61 (10th Cir. 2006) (internal quotation marks omitted); *see also Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22 (1983). When the artful pleading doctrine is invoked, the court must determine whether the state-law claims are completely preempted by

federal law or implicate substantial, disputed federal questions. *Devon Energy*, 693 F.3d at 1203–04.

Because federal courts are courts of limited jurisdiction, there is a presumption that no federal jurisdiction exists "absent an adequate showing by the party invoking federal jurisdiction." *United States ex. rel. Hafter v. Spectrum Emer. Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999). Thus, in a removed case, the burden is on the defendant to demonstrate the propriety of removal from state to federal court. *See id.* Federal courts strictly construe removal statutes and resolve all doubts in favor of remand. *De La Rosa v. Reliable, Inc.*, 113 F. Supp. 3d 1135, 1155 (D.N.M. 2015).

## Analysis

### Plaintiffs' Motion to Remand

Plaintiffs' First Amended Complaint includes six counts alleging violation of New Mexico law. It includes no count alleging violation of federal law. Nevertheless, Defendants contend that the complaint[1] is so saturated with citations to case law interpreting federal anti-discrimination statutes—i.e., Title VII and the ADEA—as to confer federal jurisdiction. They argue that Plaintiffs have improperly sought to "artfully plead" their way out of federal-question jurisdiction. I will thus consider whether Plaintiffs' references to federal law in the complaint render their claims federal in nature and whether adjudication of the claims otherwise necessarily implicates substantial, disputed federal questions. If the answer to both questions is no, there is no federal jurisdiction and remand to state court is warranted.

---

[1] All references to "the complaint" in this section refer to the First Amended Complaint [Doc. 1-2].

First, I find that Plaintiffs' citation to federal case law does not itself confer federal jurisdiction. It is true that Plaintiffs cite case law interpreting the federal anti-discrimination statutes throughout their 43-page complaint. For example, Plaintiffs allege that Defendant Abercrombie's use of sexist and racist slurs contributed to a hostile work environment. *Id.* at 9. In support thereof, Plaintiffs cite to a Tenth Circuit case construing a Title VII claim for the proposition that courts "aggregate evidence of racial and sexual hostility in determining pervasiveness of harassment." *Id.* Likewise, Plaintiffs allege that Defendant Abercrombie regularly used the word "bitch" in the office to refer to his female employees. They then rely on Title VII case law to argue that such behavior "is *prima facie* (and direct) evidence of gender discrimination" such that it "preclud[es] summary judgment." *Id.* at 27. Defendants point out several such examples in the complaint.[2]

But the conclusion that Defendants ask the Court to draw from Plaintiffs' recitation of certain principles of federal law—that Plaintiffs' claims are federal in nature, such that federal jurisdiction exists—does not follow. For one, this is not a case in which the Court is left to sift through the contents of an ambiguous pleading to piece together the claims being asserted. Plaintiffs unambiguously, explicitly assert six causes of action, all under New Mexico law. And in their briefing on the instant motion, Plaintiffs disavow any reliance on federal claims. *See* [Doc. 8] at 7; [Doc. 12] at 2. In fact, Plaintiffs take the position that they cannot assert

---

[2] Defendants additionally make much of Plaintiffs' assertion in the complaint that Defendant Abercrombie "under[went] no training regarding Title VII," noting that "[t]his allegation's relation to federal law speaks for itself." [Doc. 11] at 6.

Title VII and ADEA claims against Defendants because Defendants do not satisfy the numerical threshold required to subject an employer to those statutes.[3] [Doc. 8] at 5.

Moreover, referencing federal law in support of state-law claims does not somehow convert the state claims into federal claims. Defendants assert that Plaintiffs have indelibly tied their "claims, . . . standards of proof, and ability to present evidence" to interpretations of federal law. [Doc. 11] at 10. They argue that Plaintiffs seek some kind of "litigation advantage" by so doing. But this is a phantom concern. Mere citations to points of federal law in the context of asserting related state-law claims do not transform the applicable standards and burdens. Even if the burden of proof were more friendly to the plaintiff in a Title VII claim than in a NMHRA claim, for example, Plaintiffs would not be entitled to the more favorable federal standard by virtue of having cited to it.[4]

Indeed, Plaintiffs point to a number of decisions from across the circuit courts holding that citing to or referencing federal law in a pleading that otherwise explicitly asserts only state-law claims does not confer federal-question jurisdiction. [Doc. 8] at 5–7; [Doc. 12] at 6–7; *see, e.g.*, *Casey v. Midwest Title Serv., Inc.*, 2006 WL 2862457, at *2 (N.D. Okla. Oct. 4, 2006) (unpublished) ("Vague references to federal law in the complaint and notice of removal will not

---

[3] Defendants dispute Plaintiffs' position on the Title VII numerical threshold. *See* [Doc. 11] at 1–3. Defendants argue that a recent Supreme Court decision clarified that the numerosity requirement in Title VII is separate from its jurisdiction-conferring provisions and is thus subject to waiver and estoppel. *Id.* (citing *Arbaugh v. Y&H Corporation*, 546 U.S. 500 (2006)). The Court need not resolve the parties' dispute on this point, however. Even assuming Plaintiffs *could* assert claims under Title VII and the ADEA, the Court finds they have not done so, for the reasons discussed herein.

[4] In fact, the Tenth Circuit has held that a party's "burden under the NMHRA is identical to [her] burden under Title VII." *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 n.5 (10th Cir. 2005) (citing *Cates v. Regents of the N.M. Inst. of Mining & Tech.*, 1998-NMSC-002, 124 N.M. 633). More generally, New Mexico courts have indicated that they will look to federal law in interpreting the NMHRA. *See Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 23, 91 P.3d 58 ("[W]hen considering claims under the NMHRA, we may look at federal civil rights adjudication for guidance in interpreting the NMHRA. Our reliance on the methodology developed in the federal courts, however, should not be interpreted as an indication that we have adopted federal law as our own.").

suffice to create federal question jurisdiction."); *Shelley's Total Body Works v. City of Auburn*, 2007 WL 765205, at *2 (W.D. Wash. Mar. 9, 2007) (unpublished) ("Federal courts have repeatedly held that vague, ambiguous, or passing references to federal law in a complaint are not sufficient to support removal based on federal question jurisdiction."); *Christianson v. Merit Tex. Props., LLC*, 393 F. Supp. 2d 435, 437–38 (N.D. Tex. 2005) ("A mere reference to Title VII violations in Plaintiff's EEOC charge, which Plaintiff attached to his Original Petition[,] will not establish federal question jurisdiction."); *Heckelmann v. Piping Cos., Inc.*, 904 F. Supp. 1257, 1262 (N.D. Okla. 1995) ("The fact that the state trial judge and parties may well refer to federal precedents interpreting the ADEA for guidance does not transform the *nature* of this action into one in which the plaintiff's right to relief depends upon the application or construction of federal law."). Defendants cite no case law in support of their position to the contrary.

Second, to the extent Defendants argue that adjudication of Plaintiffs' NMHRA claims otherwise necessarily implicates substantial questions of federal law (irrespective of whether the complaint contains reference to federal law), such that Plaintiffs have impermissibly sought to "artfully plead" their way around federal-question jurisdiction, the argument is unavailing.

As an initial matter, the Supreme Court has long recognized that Congress did not intend for Title VII to preempt parallel remedies available under state law. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48 (1974). "[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement[,] rather than supplant, existing laws and institutions relating to employment discrimination." *Id.* at 48–49.

Moreover, the Tenth Circuit has recently considered, and rejected, the argument that NMHRA claims necessarily confer federal-question jurisdiction. *See Hooten v. Ikard Servi Gas*, 525 F. App'x 663 (10th Cir. 2013). In *Hooten*, the plaintiff contended that his NMHRA claims for age and disability discrimination conferred federal-question jurisdiction. *Id.* at 668–69. Even though his complaint contained no reference to any federal statutory basis for jurisdiction, he argued that its factual allegations "present a substantial question of federal law." *Id.* at 669. Rejecting his argument, the Tenth Circuit held that because "both federal law (the ADEA and ADA) and New Mexico law (the NMHRA) create causes of action for age and disability discrimination, . . . [the plaintiff's] right to relief on the state-law claims . . . do[es] not 'necessarily depend[] on the resolution of a substantial question of federal law.'" *Id.* (quoting *Gilmore*, 694 F.3d at 1170) (last alteration in original). The plaintiff could have asserted his claims under either federal or state law, and he pleaded them as state-law claims. *Id.* The court concluded that he could not "convert the state-law claims to federal claims by resorting to the 'substantial-question' branch of federal-question jurisdiction." *Id.*; *see also Heckelmann*, 904 F. Supp. at 1262 (finding that no federal jurisdiction existed where plaintiff chose to pursue state-law discrimination claims instead of any available federal remedies).

As Plaintiffs point out, other courts within the Tenth Circuit and beyond have reached the same conclusion, finding that resolution of claims brought under state anti-discrimination laws does not necessarily implicate the parallel federal anti-discrimination statutes. *See, e.g.*, *Timeout Travel Ctr., Inc. v. Betty Woodall*, 01-cv-1125 MCA/KBM, [Doc. 12] at 6–7 (D.N.M. Aug. 29, 2002) (removal not warranted when plaintiffs alleged NMHRA claims only, as Title VII did not "preempt the remedies available under state law"); *Speer v. First Savings Bank*, 01-cv-1005

LCS/KBM, [Doc. 24] at 5–6 (D.N.M. Nov. 20, 2001) (same); *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir. 1996) ("That the same facts could have been the basis for a Title VII claim does not make [plaintiff's state-law] claim into a federal cause of action. [Plaintiff] chose to bring a state claim rather than a Title VII claim, and was entitled to do so."). Defendants have supplied no case law to the contrary.

Plaintiffs are masters of their complaint, and Defendants cannot impute federal claims that Plaintiffs have not pled and expressly disavow. The artful pleading doctrine is not applicable here, because the state-law claims do not necessarily implicate federal questions. Defendants have not met their burden to show the existence of a federal question, and Plaintiffs' motion to remand should be granted.

## Attorney's Fees

Plaintiffs request attorney's fees in connection with their motion. Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Court need not find that the removing party acted in bad faith in order to award fees. *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 322 (10th Cir. 1997). The "key factor is the propriety of defendant's removal." *Id.* Section 1447 creates neither a strong bias in favor of fee awards nor a strong bias against fee awards. *Martin*, 546 U.S. at 138. The court has wide discretion in this matter. *Id.* at 139.

I find that there was no objectively reasonable basis for seeking removal. Plaintiffs' complaint contained no federal question on its face. Though Defendants urge the Court to consider the number of citations to federal case law in the complaint, this argument has been routinely rejected by the courts to have considered it. Defendants do not identify a single case supporting their position. Likewise, although Defendants maintain that the artful pleading doctrine applies here, the case law points in the opposite direction. Again, Defendants do not direct the court to any case applying the artful pleading doctrine to find that federal-question jurisdiction exists under similar circumstances.

**IT IS THEREFORE RECOMMENDED** that Plaintiffs' Motion to Remand [Doc. 8] be **GRANTED** and that the case be remanded to the Third Judicial District, Doña Ana County, New Mexico.

**IT IS FURTHER RECOMMENDED** that, pursuant to 28 U.S.C. § 1447(c), reasonable expenses be **AWARDED** to Plaintiffs.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**